Harold A. Stevens, J.
This is an action by a contractor to foreclose two mechanics’ liens for work, labor and services allegedly performed, and materials allegedly supplied by plaintiff to defendants. The liens total $78,277.65. Where the word defendant or defendants appears herein, it refers to Evyan, Inc. and/or Parfums Evyan, Inc.
Sometime in 1954, defendants purchased a building located at 350 East 35th Street, Manhattan. Thereafter it retained plaintiff to do extensive remodeling of the premises. On January 4, 1955, Ingvar Boberg, one of the partners in plaintiff, and Williams, an employee of the defendant, visited and made a tour of the premises, during which one or both of them dictated extensively to a stenographer who accompanied them, on the alterations or repairs to be made. The stenographer was an employee of the defendants.
Thereafter and on January 5, 1955, the parties had a conference at the office of the defendants. At this time plaintiff *853 submitted an estimate No. 1198, for certain work to the premises for a total amount of $36,516. Defendant testified that at this conference plaintiff was informed that the notes of the stenographer had not been completely transcribed, but would be forwarded to plaintiff together with the signed estimate if defendants’ lawyers approved the same.
Plaintiff disputes this and says that Danger, an officer of defendants, signed the estimate in their presence, then stated that he would send same to defendants’ lawyers. That nothing was said about stenographer’s minutes.
We find that the estimate was not signed at the conference. Otherwise submission of same by defendant to its attorneys would have been pointless. There is no dispute that on January 6, 1955, defendant, by special messenger, sent the signed estimate, a 12-page transcription of the alleged substance of the minutes and a rider to the plaintiff. The accompanying letter stated in part “ Enclosed please find your contract dated January 5, 1955, addressed to Parfums Evyan, Inc., covering the renovation of our new building located at 350 East 35th Street. The price contained herein totalling $36,516 is herewith approved with the understanding that the attached rider prepared by our attorneys and dated January 5, 1955, represents a part of the agreement as well as the specifications — comprising twelve (12) pages (enclosed herewith).” The letter continued with a request that plaintiff sign the rider and return same to defendant.
The rider was not signed nor was it returned to defendant. A study of the specifications reveals that it includes substantially more work than is set forth in estimate No. 1198, and embraces some of the work listed in later estimates.
The first question we must resolve is what comprises the original or initial contract between the parties. Is it estimate No. 1198 only, does it include in addition to the estimate the rider and specifications, or neither?
Preliminary to the creation of a contract and essential thereto is that there be a meeting of the minds. When estimate No. 1198 was submitted by plaintiff to defendants, it constituted an offer. In order for a binding contract to be created the offer had to be accepted in accordance with its terms. A material variation or addition thereto would constitute a counteroffer or tantamount to a rejection.
There was not an unequivocal acceptance by the defendants who set forth as a condition the inclusion of the rider and specifications as a part of the agreement. It was with that understanding that defendants approved the price. Plaintiff *854 denies that the inclusion of the specifications was within the contemplation of the parties.
Plaintiff testified that it failed to read the rider and specifications upon receipt and indeed attached so little importance thereto that it filed same without reading them until this dispute arose. We doubt this. Common sense and ordinary business caution would dictate that plaintiffs examine the same after reading the accompanying letter. Williams and the stenographer testified Roberg, Sr., joined in dictating to the stenographer. Even one less astute than the senior member of plaintiff, remembering the presence of the stenographer would recognize the transcription and realize its possible relation to future work on the premises. Yet mere knowledge alone does not constitute acceptance.
Would the fact that plaintiff began work immediately thereafter warrant a finding that a valid contract was created?
While conduct may under certain conditions indicate acceptance we do not hold that the beginning of work was such a manifestation. The specifications added so much to estimate No. 1198, that a positive overt act and transmittal of intent of plaintiff would be required. The defendant could not by the mere sending of the specifications impose a burden of compliance upon the plaintiff. Accordingly we determine that under the first cause of action the claim is in quantum meruit, and we hold on the proof there is no balance due thereunder.
While the defendant could not impose extra burdensome obligations upon plaintiff by the mere sending of specifications, the same reasoning applies to the unsigned estimates which plaintiff says were approved orally, and for which defendant denies approval or claims a duplication.
Resolving what work in such estimates was actually performed, determining what was new or additional, and what was a duplication is difficult. By plaintiffs’ own admission, Exhibit F, invoice No. 3933, in the amount of $93,640.35, its final full bill to defendants, included an overcharge or duplication of some $20,000 plus. Though the liens total $78,277.65, it was not clearly defined what item or items were duplications or overcharges, nor was such information transmitted to defendants.
Subsequent to the sending of the bill and prior to the issuance of the summons plaintiff received a check for $31,170.08 (we shall refer to this check later). Plaintiff says there was a further payment of $3,753.14 made. Plaintiff now seeks only the total sum of $44,469.49, though the above sums, admittedly, *855 represent the only payments made to plaintiff since the final full bill.
It is not the purpose of the law to allow one to be unjustly enriched if we find work was done and no payment made. The system of bookkeeping by the plaintiff and the manner in which it operated its business with respect to this defendant seem incredible. By the same token this defendant has paid out approximately $165,805.43, to this plaintiff or in connection with work done at the premises, and it is difficult to understand how defendant could have a clear picture or understanding of what defendant was paying for.
Plaintiff testified that it paid to subcontractors the sum of $93,540.96, and defendant paid an additional sum of $14,000 directly to subcontractors. This means that out of a total of $165,805.43, plaintiffs have $58,204.47 credited as payment for themselves.
There is testimony that approximately $12,000 to $13,000 is still due the subcontractors. Testimony from the major subcontractors, Phillips, Heimler, Melon, Ross and Reiner, put their total bills at between $85,000 and $86,000.
We have tried to analyze the invoices, which total far in excess of the amounts claimed, and to analyze as well some of the estimates. Causes of action numbered 8, 11, 15, 16, 17, 18, 26, 28, 29, 30-44 inclusive, 46, 47, 53 and 54 are based upon alleged oral contracts. They total roughly $44,000. In each instance the testimony by plaintiff as to alleged conversations with either Williams, De Sina or Dr. Danger, was substantially the same, resulting in an alleged directive to proceed.
On April 20,1955, by written reservation on estimate No. 1308, Exhibit 19, defendants questioned possible duplication or incorrect figures, and from that time either refused to sign many estimates or made written reservations on such estimates. Consequently we are inclined to scan very closely all alleged oral agreements or unsigned estimates after that date. There is approximately $26,000 involved in estimates which were not approved in writing, and on much of which we entertain doubt that the work was performed or that such work was not a duplication for which payment was made.
On causes of action numbered 36 to 44, and 53 — on which defendant claims no estimates were furnished by plaintiff, and on which plaintiff contends there were oral agreements, defendant claims a total deduction of approximately $11,942.30. Testimony by defendant on the items involved is considerably clearer and more persuasive than that of plaintiff. We allow the items and deduct same from the total sought by plaintiff.
*856 Plaintiff testified that of the total sum billed to defendants approximately $50,000 to $53,000 represented the cost of labor to the plaintiff. Plaintiff reached this figure by going over the payroll record of plaintiff and relying upon the memory of Mr. Boberg, Sr., who testified that he placed a check mark beside the names of certain men whom the witness recalled worked on this job, together with the dates or hours (total) such persons allegedly worked. Such computation was done after this action was started. There apparently were no time sheets or separate, readily identifiable work records kept by this plaintiff. The accuracy of the estimate is certainly open to question.
We find several items of duplication in estimates. Estimates Nos. 1350, 1287 and one portion of estimate No. 1297, seem to be duplicates or included in estimate No. 1207 and/or No. 1198. Though estimate No. 1266 is accepted, it seems a duplication of estimate No. .1207, and the 45th cause of action is the second item of estimate No. 1287. The total involved approximates $5,944.65.
The total of the items above referred to including the $526 under the first cause of action, plus $11,942 and $5,944.65 equals $18,412.65.
In an attempt to determine what sums, if any, might be due under the alleged oral agreements, excluding the 36th to 44th causes of action and the 53rd cause, we have taken a subcontractor’s actual charges and the amount added thereto by the plaintiff in order to determine the average percentage increase. Even this cannot accurately reflect the fact for an examination of some of these items seems to reveal further duplications or varying percentage increases.
Estimate No. 1288, the 16th cause of action was specifically disapproved. The amount claimed is $3,317. A directive by “ S. Williams” is attached, the estimate is dated April 1, 1955, but the “time sheet” attached (if we so consider it) relates to February and March, 1955 and there is nothing to indicate that much of this work is not covered in other estimates.
Under the 21st cause of action we allow a deduction of $1,170 as follows: On estimate No. 1313, we deduct $570 from item 1, $450 from item 2 and $150 from the last item.
The total amount of $44,469.49 now sought by plaintiff is reduced by $19,886.84, leaving a balance of $24,582.65.
On the items for roofing the estimates or agreements are vague so that it is impossible to say if the Stanton work amount *857 ing to $1,230 was or should have been embraced in work to he done by these plaintiffs.
The foregoing illustrates that this claim was unliquidated, and points up the very real difficulty even now of determining from the records if there is any liability.
The defendants plead accord and satisfaction. On that defense certain evidence might be reviewed.
Invoice No. 3933, dated November 21, 1955, billed the defendants for $93,640.25. Invoice No. 3985, dated January 1, 1956, hilled them for an additional $4,288.81 for extra work or a total of $97,929.16. The defendants claimed these bills were incorrect and contained many duplications, overcharges and unauthorized work. On December 28, 1955, defendants sent to plaintiffs a check in the amount of $31,170.08, which on its face stated “ payment in full of all claims to date, etc., as per letter, etc.” The accompanying letter set forth that the defendants were “ withholding $5,000 as security for items still unfinished, or items that do not comply with the specifications,” and also that losses due to defendants by reason of plaintiffs’ delays “ have not been calculated at this time ”. That “ the enclosed cheque is tendered to you in full payment to date of all outstanding bills due you and your subcontractors ” from defendants. “ This cheque is submitted to you on condition that you obtain and forward to us releases from all your subcontractors.”
The plaintiffs had the check certified January 23, 1956, while the writing remained unaltered on the face of the check. Sometime between that date and June 1, 1956, the date the check was cashed, plaintiff drew lines through the writing. It was agreed between counsel on June 1, 1956, that whatever rights the respective parties had on that date would survive and not he affected by the cashing of the check.
Plaintiff argues that defendant did nothing more than it was obligated to do and therefore there is no accord and satisfaction.
Generally, we speak of an “ accord ” as being a contract, express or implied, and the “ satisfaction ” as being the execution of such contract. Like any other contract in order to be effective it must be founded upon a proper consideration, that is, such benefit to the creditor or detriment to the debtor as would support a simple contract.
Certainly the debtor must do more than he is already bound to do, but if he does that, a misapprehension as to the legal effect thereof by a creditor is no excuse if the creditor acts knowingly and voluntarily.
*858 Here there was a real dispute between the parties as to the existence of the obligation and the amount thereof.
Between November 21, 1955, when plaintiffs billed defendants for $93,640.35 and December 13, 1955, when liens totalling $78,277.65 were filed, defendants made no payments, but plaintiffs reduced the amount to the total of the liens, indicating a substantial overcharge, later admitted.
On September 13, 1955, the parties had signed an agreement providing*, in part, that the work was to be completed by October 29, 1955, or plaintiffs were to pay defendants $100 for each day the work remained uncompleted. Admittedly the work was not completed by October 29, 1955.
By defendants’ letter of December 28, 1955, it was claiming* overcharges and unauthorized charges and damages for faulty or incomplete work, all of which were itemized, totalling $58,812 (the $5,000 item is excluded here).
From the state of the estimates and invoices, some of which bore the same numbers but allegedly represented different work or different charges, and the difficulty even at this date of obtaining a clear or accurate picture of the obligations of the parties, one must conclude that the account was unliquidated. A review of the correspondence and study of the documents herein, convinces us that there was a real dispute as to the nature and extent of the obligation. It was under such conditions that the debtor drawer tendered the check to the plaintiff as payment in full.
The check was not cashed until June, 1956, at which time lines had been drawn through the added writing. On January 23, 1956, when plaintiff payee procured its certification the writing had not been altered or interfered with. The certification by the bank thus constituted an acceptance and an assignment of such funds in accordance with the conditions thereon. Moreover a credit of the amount was, by operation of law, placed to the credit of the holder. The striking of the condition by the plaintiff subsequent to the certification, since the amount of the debt was in dispute, did not operate as a bar to the discharge of the obligation. We find there was an accord and satisfaction.
As to the various counterclaims we hold the provision for payment of $100 per day by the writing of September 13, 1955 constituted a penalty and not liquidated damages. Consequently the counterclaim founded on that item must fall.
On those counterclaims for damages for breach of the agreements and for moneys expended to complete the work, the defendant did expend a sum or suffer damage in excess of *859 $5,000, but under its letter of December 28,1955 we hold defendant is limited and the claims are allowed only to the amount of $5,000. Such a provision with its limitation is also, in effect, a part of the accord and satisfaction. This amount is paid by the sum retained.
Upon the whole case we find that the plaintiff failed to sustain the burden of proof of its case by a preponderance of the credible evidence. That the liens were exaggerated and must fall. Judgment is given for the defendants. All motions not otherwise disposed of by the above determination are now denied. Defendant Federal Air Conditioning Corporation did not appear on the trial and no proof was adduced on its cross action and counterclaim.