Nat H. Hentel, J.
Plaintiff’s bookeeper was the sole witness testifying at this nonjury trial. She was called by both sides to testify, and' her testimony stands uacontroverted. The proof establishes that the witness conducted all transactions on behalf of plaintiff painting contractor with five or .six of the defendant’s agents or employees for the period May through July, 1974. A Mr. Podek contacted plaintiff on behalf of defendant management corporation and retained plaintiff to do painting in the some 60 buildings under defendant’s management. Mr. Podek was to give the orders for painting by telephone or mail, and plaintiff was to paint :at the rate of $35 per room plus additional for “ open plastering” depending upon each apartment. The witness testified that it was the custom of the trade to count kitchens and bathrooms as separate rooms for the purpose of billing.
Prom invoice records, the court is satisfied that plaintiff was engaged to do '23 painting jobs between May 22 and June 30, 1974, for which plaintiff billed defendant a total of $3,779.50, and was only paid $2,404.50 by one check dated July 17, 1974. The witness testified that no other amounts were paid for these jobs and, although the balance of $1,375 had been duly demanded, no other payment has been made. In fact, a demand was made of a Mr. Wiener, allegedly the^son of defendant’s attorney.
Defendant .relies principally on the check in evidence as proof of its affirmative defense of ‘ ‘ executed accord and .satisfaction. ’ ’ The printed form check bears the following legend in the upper left-hand corner in quite small print: “By endorsement this check when paid is accepted -in full payment of the following account. ’ ’ There follows in a ruled box under this legend: handwritten building addresses, apartment numbers, .and amounts allocated in payment of plaintiff’s bills as filled' in by defendant. Under the box, in equally small print, is the following legend: “ If incorrect please return-no receipt necessary.” Under that last legend in blue ink and handwritten by defendant as its attorney admits is the further legend: “In full settlement of all claims.” The word “ full ” was obliterated by the witness, and she overwrote the word ‘1 partial ’ ’ in place of ‘ ‘ full ’ ’; and then deposited the check for collection.
The check is dated July 17, 1974, a Wednesday 5 it was mailed and therefore received a day or two later by plaintiff, and then deposited by mail and canceled at .plaintiff’s bank for collection on July 22, 1974. When she was asked on cross-examination *1070 why the check was deposited if it was not in the full amount, the witness replied that plaintiff was 1‘ waiting f o.r another check to be received on account of the balance, and I deposited the check because I needed to meet our payroll.” Her testimony further .shows an •unswerving pattern on the part of defendant in paying less than the full amount billed for each of the individual apartment jobs. This apparently was a unilateral practice not otherwise explained by defendant, as was its unilateral action in mailing the check exhibit ‘ ‘ in full settlement of all claims.” There was no admissible proof that .the amounts billed by plaintiff were ever disputed by defendant. Further, the witness testified that she did not see or .read the small print legends on^jhe check, but only had her attention drawn to the handwritten legend.' which was also circled in blue ink and, therefore, a conspicuous attention-getter.
When plaintiff rested, defendant moved to dismiss the complaint on the ground that* as a matter of law, defendant had a right to condition .a •“ proposed settlement on any conditions it saw. fit.” Defendant’s attorney also argued that since plaintiff cashed the .check, plaintiff is bound by its irrevocable decision to take the check on the conditions stated1 on the face of the check, and thus, the cashing of the check was an acceptance of defendant’s conditions in full payment regardless of plaintiff’s subsequent alteration of “full’-’ to “partial.” Defendant cites in support of its position: (1) Mercury Record Corp. v. Glaser (29 Misc 2d 567). However, the count does not find the circumstances of that case applicable to this one, and is distinguishable in that there was a four-year hiatus in the Mercury case in discovering an .error in overpayment. Here, suit was commenced within the month of July, 1974, when the check was received and deposited by plaintiff ito perfect its claim to the balance due. Further, the Mercury case is a First Department case not binding upon this count; it is a memorandum decision rendered at Special Term holding against plaintiff .“as a matter of discretion ” (p. 569); and does- not cite .any legal authority for the position taken.
(2) The next case cited by defendant is Carlton Credit Corp. v. Atlantic Refining Co. (12 A D 2d 613), also a First Department -case, and thus not binding upon this court. This case is also distinguishable to the one now before this court in that the disputed check was. -annexed to a covering letter “ itemizing in detail ” the deductions claimed. The court concluded in the Carlton Credit case that it was: “ clear that the payment made was conditioned upon its acceptance as payment in full for the *1071 larger .amount, claimed by the plaintiff to be. due from the defendant. There is no merit to the contention that the -amount involved was liquidated and not in dispute. The letter clearly points up a difference in the amounts claimed to be due by the respective parties. Such .a difference renders the amount in question unliquidated ‘ within the meaning of * * * accord and satisfaction * * * The plaintiff could not accept the payment and reject the condition. ’ ’
Here, the facts are not the same. In Carltonthe court found the covering letter, “ clearly conditioned the check upon its being payment in full.” Here, .there was no detailed letter and the ruled boxed-in portion of the cheek, two inches by two inches square, briefly listing addresses, apartment numbers and amounts .only, does not -spell out in each instance, with clear specificity, that the listed amounts proffered were, in fact, the final amounts owing for each individually specified painting job. The Carlton case cites Chief Judge Cabdozo’s holding in Hudson v. Yonkers Fruit Co. (258 N. Y. 168, 171) to the effect that11 "What is isaid is overriden by what is done, .and assent is imputed as an inference -of law. ’ ’ This court points out that an inference of law is rebuttable by uncontroverted proof to the contrary.
(3) The third case cited by defendant is Roberg v. Evyan (7 Misc 2d 851), also a Supreme ¡Court, -Special Term, New York County matter, and, as such, is also not binding upon this court. This case is also distinguishable from the one under consideration in ¡that it involved an unliquidated sum where there was a real dispute as to the nature and extent of the obligation, and under .such circumstances where the debtor tendered a check to plaintiff as payment in full there was an accord and satisfaction, notwithstanding the striking of the ¡condition on the check by ¡the plaintiff -subsequent .to the certification of the check. The court in the Roberg case found (p. 858) : ‘ ‘ From the state of the estimates and invoices, some of which bore the same numbers -but allegedly represented different w-ork or different charges, and the difficulty even at this date of obtaining a clear or accurate picture of the obligation of the parties, one must conclude that the account was unliquidated. ’ ’ This i s not the instant case where the proof is not only uncontroverted but fully clear and certain as to the amounts billed and owed for each -of the 23 invoices cited in plaintiff’s proof.
(4) Finally, defendant cites in its -defense Armour & Co. v. Schlacter (159 N. Y. S. 2d 135), a 1957 Westchester County Court decision, which held that “ where debtor ¡sent check to *1072 creditor in full payment and .satisfaction of creditor’s [liquidated] claim, creditor would not be heard to contend that it had accepted the check as payment on account of the indebtedness only, even though it had struck out the payment and satisfaction notation on the check.” The check in the Armour case bo,re the legend (p. 136): '“ This check is delivered to you in full payment and satisfaction of your claim in the sum of $383.70 against Mr. Schlacter ” plus the further handwritten notation thereon “ in full payment and satisfaction of your $383.70 claim against Max Schlacter.” These notations distinguish the Armour case from ¡the instant case since the legend in dispute here merely 'ambiguously reads ‘ ‘ in full settlement of all claims.” "What claims? What dollar amounts? All that ever existed from time immemorial to the present? Where is there a clear ¡and unequivocal statement of what claims .specifically the defendant was seeking’ to obtain plaintiff’s settlement, .satisfaction, release, accord or compromise ? No! Here there was an .undisputed liquidated 'sum which could not properly under these circumstances create ¡an accord and .satisfaction shield for defendant. Further, this case is also not binding upon this court.
A.liquidated .and undisputed claim cannot be paid by ¡a lesiser amount 'unilaterally decided upon by thé debtor in full settlement or ¡satisfaction thereof thus creating an .accord and satisfaction defense, (See 1 N. Y. Jur., Accord and Satisfaction, pp. 86-87, 89, 104-105; Schuttinger v. Woodruff, 259 N. Y. 212, 216; Kominos v. Kominos, 9 A D 2d 938; King Metal Prods. v. Workmen’s Compensation Bd., 29 Misc 2d 742, affd. 20 A D 2d 565; and Commissioners of State Ins. (Fund v. Crown, 65 Misc 2d 593.) A check marked “in full settlement” or “satisfaction ’ ’ of an existing indebtedness ¡and deposited only creates an .accord ,and satisfaction as between the parties when the sum allegedly owing is unliquidated and disputed. (Fuller v. Kemp, 138 N. Y. 231, ,237; Nassoity v. Tomlinson, 148 N. Y. 326, 329-330.) Here, the 'sum is liquidated.
When the court reserved decision on defendant’s motion to dismiss, defendant called plaintiff’s witness as its own witness in an attempt to ¡show that there had been a dispute as to 'the amounts owed. The witness testified that there were never discussions ,as to the ¡amounts to be paid or about [Bills, and that she never ¡sat down with any one in the office to discuss open items, 'ghe cited that ,she had had discussions about jobs with an “Irving ¡Spo.dek,” a “Donald Wiener ” and a “Mr. Cubaro,” with defendant’s attorney’s two sons, and a “ Ruth ” *1073 and a “ Bonnie,” all of the defendant’s office. Defendant tried to develop ¡that there was a dispute as to charging for painting of .bathrooms, but the witness’s testimony was that Mr. Spodek, in all discussions with her, told her that plaintiff would be paid for bathrooms and kitchens each as .separate rooms.
Each case must rise and fall on its own merits, facts and circumstances. The facts in this case remove it from the umbrella of the doctrine of accord and satisfaction which defendant seeks to interpose ias a shield against its just obligations. It would be a manifest injustice to apply the doctrine defendant relies upon especially since the cases it cites are distinguishable and thus inapplicable here.
Plaintiff’s testimony establishes a pattern of regular billings and payments on account of each job always less than the billings. There is no bona fide dispute here. The work was done by plaintiff. Apparently the defendant wanted to clip off a bit from each bill. Sending .the check in evidence to catch the unwary .plaintiff .off-guard and off-base by marking it in full payment when defendant could not prove that fact, or the fact of a dispute as to billings is a sharp practice which does not result in the hoped for accord and satisfaction. It appears that defendant is a substantial and experienced realty management agency, and as such must know that its painting contractors, whose labor makes its income-producing units habitable, must .meet payrolls and other business expenses week-by-week. The court concludes that defendant was hoping plaintiff would be hard-pressed enough either to accept a lesser amount, or would rise to the bait, and cash the preferred check in good faith by altering the condition of “full” to “ partial ” payment thus springing its own trap to snare the .unwary creditor.
The court’s distaste for .such a practice is heightened by the revelation late in the trial, after defendant had finished examining plaintiff’s bookkeeper as its own witness, the defendant’s trial attorney was, in fact, defendant’s president and chief executive officer. He sought to offer himself as a witness to prove that none of defendant’s employees had been authorized by the corporation to pay for kitchens and bathrooms separately; what the 'Universal painting practices are with respect to kitchens and bathrooms; and further to establish that the amount claimed was in dispute at the time the check exhibit was mailed. This he offered to do after his attempt to establish the same through plaintiff’s witness had failed.
It is to be noted that defendant’s attorney came to trial with no other witnesses to testify. Not one of the six employees of *1074 the ¡defendant mentioned by .plaintiff’s witness as those with whom ¡she had dealings was called to dispute or refute plaintiff’s proof. The court ascertained from defendant ’¡s attorney that .all ¡of said employees were alive and well, not suffering any disability, and were available to testify. Thus, no .satisfactory explanation was ¡offered why they were not called. The court can draw the strongest inference from this circumstance that their testimony, if they had been called to the witness stand, would not support defendant’s contentions or controvert plaintiff’s proof. When the court reserved decision on defendant’s motion at the end of plaintiff’s case, it was then that defendant had' to go forward. Out of desperation, defendant claimed ¡surprise and tried :to ¡develop ia smokescreen of a dispute about the ¡amount owed. The court refused to allow defendant’s attorney to testify on two grounds: (¡1) the court ascertained from him that as president of or attorney for defendant management corporation he never had ¡any transactions, discussions, o,r conversations with plaintiff or plaintiff’s bookkeeper; ¡and that he never himself disputed' the amounts claimed with plaintiff; and (2) that his attempt to testify with respect to material facts in this case would place him in violation of canon 5 of the New York State Bar Association Code of Professional Responsibility (EC 5 — 9, 5-10) :
“ Occasionally a lawyer is called upon to decide in a particular ease whether he will be a witness or ¡an advocate. If a lawyer ■is both counsel ¡and witness, he becomes more easily impeachable for interest and ¡thus may be a less effective witness. Conversely, the opposing ¡counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position ¡of arguing his own credibility. The roles of .an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause ¡of another, while that of a witness is to state facts objectively.”
‘ ‘ Where the question .arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as ¡an advocate. ’ ’
■Further, Disciplinary Rule 5-102 states:1 ‘ (A) If, after undertaking employment in contemplated ¡or pending litigation, a lawyer learns or it is obvious that he ¡or ,a lawyer in his firm ought to foe called as a witness on behalf of his client, he ¡shall withdraw from the ¡conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may *1075 continue the representation and he or a lawyer in his- firm may testify in the circumstances enumerated in D B 5-101 (-B) (1) through .(4) ” (dealing with unoontested matters, matters solely of formality, value of legal services, or of substantial hardship to the client).
In any event, if there were a dispute to the amount owed to be shown by -conversations between the defendant’s employees and plaintiff, the attorney’s testimony concerning s-ame would be inadmissible as pure hearsay upon his -own admissions when questioned by the court.
The court further questions the validity of the printed check legends in view of the fact that defendant chose to alter their impact by superimposing a handwritten legend.
"Under all of the circumstances and the law, the court concludes that plaintiff established the burden of his proof in that the liquidated sum of $1,375, was and is now owing by defendant. Defendant’s attempt to obtain an accord and satisfaction via the “backdoor” so-to-speak is rejected on the grounds that the court will not permit -defendant to accomplish indirectly what it could not accomplish -directly — a -compromise of a claim by mutual consent after -dispute between the parties. Judgment accordingly for plaintiff in the sum -of $1,375, with interest from July 1, 1974.